FILED
CLERK, U.S. DISTRICT COURT

MAY 27 2021

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1 | GAVIN WAYNE HOOPER
2 | REG. NO. 73210-112
    FCI THREE RIVERS
3 | FEDERAL CORRECTIONAL INSTITUTION
4 | P.O. BOX 4200
    THREE RIVERS, TX 78071
5 | Appearing *Pro Se*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

\*\*\*

| UNITED STATES OF AMERICA, | No. CR 16-00147(B)-JAK |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S UNEXHAUSTED MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)** |
| GAVIN WAYNE HOOPER, | |
| Defendant. | |

COMES Defendant, GAVIN WAYNE HOOPER ("Hooper"), appearing *pro se,* and files Defendant's Reply to Government's Opposition to Defendant's Unexhausted Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("GO"), and would show as follows:

**PRELIMINARY STATEMENT**

As a preliminary matter, Hooper respectfully requests that this Court be mindful that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. See *Pouncil v. Tilton*, 704 F.3d 568 (9th Cir. 2012); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S. 519 (1972)(same).

GAVIN WAYNE HOOPER
REG. NO. 73210-112
FCI THREE RIVERS
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 4200
THREE RIVERS, TX 78071

May 24, 2021

Ms. Kiry K. Gray
Clerk of Court
U. S. District Court
Central District of California
Western Division (Los Angeles)
255 East Temple Street
Los Angeles, CA 90012-3332

    RE:   *Hooper v. United States*
            Crim No. 2:16-cr-00147-JAK-1

Dear Ms. Gray:

Enclosed please find and accept for filing Defendant's Reply to Government's Opposition to Defendant's Unexhausted Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) . Please submit this reply to the Court.

Thank you for your assistance in this matter.

                                Sincerely,

                                GAVIN WAYNE HOOPER
                                Appearing *Pro Se*

*Encl. as noted*

## **RESPONSE TO GOVERNMENT'S OPPOSITION**

The thirty-five (35) page GO is divided into five (5) main sections: (1) Introduction; (II) Statement of Facts; (III) Legal Framework for Compassionate Release; (IV) the Court must Dismiss or Deny Defendant's Motion; and (V) Conclusion. See Doc. 196 at pp. 8-28.[1] Hooper will reply sequentially to each main section as follows:

### I. Introduction

In this main section of the GO, the government to have Hooper's Motion for Compassionate Release dismissed for a variety of reasons including that: (1) he has not exhausted his administrative remedies; (2) he cannot meet the extraordinary and compelling reasons requiring release; and (3) it is evident that defendant is a danger to the community and the factors weigh against release pursuant to 18 U.S.C. § 3553(a). See Doc. 196 at pp. 8-9. For the reasons stated below, Hooper's sentence should be reduced to time served for his immediate release.

### II. Statement of Facts

This main section of the GO is further divided into four (4) subsections: (A) Defendant's Crimes Were Wide Ranging And He Received A Below-Guidelines Sentence; (B) Defendant Has Served Less Than Fifteen Percent Of His Sentence, He Has Been Sanctioned Three Times In Less Than A Year, And He Has Already Contracted COVID-19; (C) Defendant's Current Motion For Compassionate Release And Failure To Exhaust Administrative Remedies; and (D) The Bureau Of Prisons' And Congress's Response To COVID-19.

#### A. Defendant's Crimes Were Wide Ranging And He Received A Below-Guidelines Sentence

This subsection of the GO gives a fair and accurate rendition of the facts and procedural background in this case. See Doc. 196 at pp. 9-12. Hooper does not object to this subsection of the GO.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Central District of California, Western Division in Criminal No. 2:16-cr-00147-JAK-1, which is immediately followed by the Docket Entry Number and Page Number where appropriate. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

2

B.  Defendant Has Served Less Than Fifteen Percent Of His Sentence, He Has Been Sanctioned Three Times In Less Than A Year, And He Has Already Contracted COVID-19

The government makes the above contention in this subsection. See Doc. 196 at pp. 5-6. Hooper does not object to this subsection of the GO.

C.  Defendant's Current Motion For Compassionate Release And Failure To Exhaust Administrative Remedies

This subsection of the GO, the government asserts that Defendant has not exhausted his administrative remedies, and thereby precluding the Court from reviewing this motion. See Doc.196 at pp. 6-7. Contrary to the government's assertion, the Court need not and should not wait for Hooper to exhaust administrative remedies under § 3582(c)(1)(A), as this will almost assuredly exacerbate an already impending public health catastrophe in our jails and prisons, while posing a particular and real danger to Hooper. See generally *Washington v. Barr*, 925 F.3d 109, 120-21 (2d Cir. 2019) ("[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile.").

Federal courts have found that they can hear applications prior to the expiration of 30 days (or the exhaustion of administrative remedies) if there is an emergency. See *United States v. Agustin Francisco Huneeus*, No. 19 Cr. 10117 (IT), ECF No. 642 (D. Mass. Mar. 17, 2020) (granting defendant's emergency motion based on COVID-19); see also *United States v. James Arberry*, No. 15 Cr. 594 (JPO), ECF No. 84 (S.D.N.Y. Nov. 12, 2019) (hearing and granting emergency compassionate release application of prisoner with cancer). This accords with general administrative law principles and the exception to administrative exhaustion requirements in numerous statutory schemes. See, e.g., *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (waiving requirement to exhaust administrative remedies where "exceptional circumstances of peculiar urgency are shown to exist") (citing *Granberry v. Greer*, 481 U.S. 129 (1987)); *Washington v. Barr*, 925 F.3d 109, 119 (2d Cir. 2019) (finding that administrative exhaustion requirements can be waived if delay would cause irreparable injury); *Maxwell v. New York Univ.*, 407 F. App'x 524, 527 (2d Cir. 2010) (same).

"[A]pplication of the exhaustion doctrine is 'intensely practical'" and should "be guided by

3

the policies underlying the exhaustion requirement." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 n.11 (1976)).

In the interest of brevity, this claim in this subsection was thoroughly and sufficiently briefed in Hooper's original Motion for Compassionate Relief. No further briefing is necessary.

### D. The Bureau Of Prisons' And Congress's Response To COVID-19

The final subsection of this main section claims that the BOP has taken aggressive steps to protect inmates' health and resist the spread of COVID-19. Contrary to the government's point of view, for the past 13 months, COVID-19 has torn through BOP facilities. Meanwhile, BOP has failed to take the necessary steps—or to use available resources—to remediate the pandemic's risk. Even now, despite the increased availability of vaccines across the country, COVID-19 remains a lifethreatening risk to those in BOP custody. The death count of incarcerated individuals continues to mount, and conditions in federal detention facilities remain dire.

Preventable deaths in BOP continue. At least 244 individuals in BOP care, including private prisons, have died from COVID-19, with deaths continuing in recent weeks. Since March 1, 2021, at least nine individuals have died while in BOP custody due to COVID-19.[2] One study calculated that within BOP, the COVID-19 case rates and the standard mortality ratio were approximately 5 and 2.5 times higher than those for the U.S. adult population, respectively.[3]

---

[2] Bureau of Prisons, COVID-19 (last accessed Apr. 26, 2021) (BOP COVID-19 site), https://www.bop.gov/coronavirus/. It appears BOP removed 7 people from the death tally from private prisons. Univ. of Iowa College of Law Fed. Crim. Def. Clinic, 245 Deaths in BOP Custody, an Incalculable Loss (Mar. 25, 2021),https://law.uiowa.edu/sites/law.uiowa.edu/files/2021-03/They%20Are%20Human%20Too%203-25-21.pdf

[3] Robin Toblin et. al., COVID-19 Case and Mortality Rates in the Federal Bureau of Prisons, Am. J. of Prevent. Med. (Feb. 24, 2021), https://www.ajpmonline.org/article/S0749-3797(21)00119-7/fulltext; see also Hearing (Joint Statement of Aaron Littman, Lauren Brinkley-Rubenstein, and Michelle Deitch), https://drive.google.com/file/d/1Fxllc4qq73pDDx1PgZLA1OaHkz2mjp4w/view (In January 2021, "the active infection rate in federal prisons was more than five times that of the country's overall population.").

Preexisting and long-standing deficiencies in BOP's health care services have contributed to the spread and lethality of COVID-19. Dr. Homer Venters, a physician and epidemiologist who has inspected several BOP facilities to assess their COVID-19 response, identified a "disturbing lack of access to care when a new medical problem is encountered" and is concerned that "[w]ithout a fundamental shift in how BOP approaches . . . health services, people in BOP custody will continue to suffer from preventable illness and death, including the inevitable and subsequent infectious disease outbreaks."[4] Examples of BOP's failure to deliver adequate care abound. For instance, Curtis Horne, 59, and Jessie Carter, 54, both suffered from long-term medical conditions; both were found unresponsive, and later pronounced dead. Only after their deaths did they test positive for COVID19.[5] And the deaths of at least 16 other incarcerated people, who BOP classified as "recovered" from COVID-19 prior to their deaths, raise serious questions about the ability of BOP to care for COVID-positive individuals in custody.[6] Because of the space limitation in this Reply, Hooper will not expand any further on this subsections. However, the government's claim that the BOP has taken aggressive steps to protect inmates in the pandemic is wholly erroneous.

---

[4] Hearing (Statement of Dr. Homer Venters) ("Dr. Venters Statement") at 2, https://assets.documentcloud.org/documents/20616259/ventersbop.pdf.

[5] Bureau of Prisons, Inmate Death at USP Florence (Mar. 24, 2021), https://www.bop.gov/resources/news/pdfs/20210324_press_release_flx.pdf; Bureau of Prisons; Inmate Death at FCI Talladega (Mar. 18, 2021), https://www.bop.gov/resources/news/pdfs/20210318_press_release_tal.pdf.

[6] Bureau of Prisons, Press Releases, https://www.bop.gov/resources/press_releases.jsp (last accessed April 29, 2021) (press releases for deaths of Adrian Solarzano, FCI Terminal Island; Christopher Carey, FCI Lompoc; Harry Edward Cunningham, FCI Memphis; Jimmy Allen Monk, FCI Talladega; Kevin Gayles, FCI Jesup; Girard Lafortune, FMC Devens; Spencer Sarver, USP Atlanta; Joseph Lee Fultz, FCI Terre Haute; Shauntae Hill, FCI Terre Haute; Johnathan Delargy, FCI Seagoville; Fernando Marulanda Trujillo, FCI Fort Dix; Jaime Benavides, MCFP Springfield; Leonard Williams, MCFP Springfield; Chad Noziska, FCI Sheridan; William Andrew Davison, USP Tucson; Paul F. Archambault, Sr, FMC Devens).

### III. Legal Framework for Compassionate Release

In this main section of the GO, the government attempts to state the legal framework for Compassionate Release relief. It is divided into three sections regarding the framework of compassionate release: (1) Exhaustion of administrative remedies; (2) the determination of extraordinary and compelling reasons; and (3) the 18 U.S.C. § 3553(a) factors.

First, the government opines that the administrative remedy exhaustion is mandatory. See Doc. 196 at p. 14. As shown above and below, a district courts have waived this requirement

Although the exhaustion requirement is explicit in section 3582(c), some district courts have held they may waive this requirement in light of the emergency circumstances caused by the current COVID-19 pandemic. See, e.g., *United States v. Zukerman*, (No. 16-cr-194), 2020 WL 1659880, at *3 (S.D.N.Y April 3, 2020) (finding exhaustion requirement is not "absolute" and delineating three circumstances where it may be excused); *United States v. Colvin*, (No. 19-cr-179), 2020 WL 1613943, at *2 (D. Conn. April 2, 2020)(finding the same).

Some Courts have excused failure to comply with the exhaustion requirement in this context for equitable reasons like futility. See, e.g., *United States v. Perez*, No. 17-cr-513-3 (AT), 2020 WL 1546422, (S.D.N.Y. Apr. 1, 2020).

Second, Hooper does not object to the extraordinary and compelling reason because the government does not dispute that defendant's health during the pandemic satisfies the extraordinary and compelling reason requirement. See Doc. 196 at p. 14. It does make mention that having already contracted COVID-19 and having suffered no ill effects, it appears that defendant is not as vulnerable as he would like the Court to believe. However, the government does not take into consideration post COVID-19 Syndrome. As the pandemic recedes, some consider this phenomenon as the next emerging mental health crisis. Symptoms of the post covid syndrome mimic those of other mental health conditions, including anxiety, post-traumatic stress disorder ("PTSD"), and obsessive-compulsive disorder ("OCD"). And, the pandemic and related factors appear to be the cause. Profs Ana Nikčević from Kingston University of London and Marcantonio Spada from London South Bank University, both in the U.K., developed the concept of COVID-19 anxiety syndrome. In a paper that appears in *Psychiatry Research* in October 2020, Profs Nikčević and Spada outline the characteristics of COVID-19 anxiety syndrome, naming avoidance, compulsive

symptom-checking, worrying, and threat monitoring (combined).

This syndrome manifests as the inability to leave the house because of COVID-19 fears, frequent checking for symptoms despite not being in a high-risk scenario, and avoiding social situations or people. Investigators note that people with this syndrome tend to experience increased post-traumatic stress, general stress, anxiety, health anxiety, and suicidal ideation. People with post COVID-19 Sydrome also report experiencing different combinations of the following symptoms: (1) Tiredness or fatigue; (2) Difficulty thinking or concentrating (sometimes referred to as "brain fog"); (3) Headache; (4) Loss of smell or taste; (5) Dizziness on standing; (6) Fast-beating or pounding heart (also known as heart palpitations); (7) Chest pain; (8) Difficulty breathing or shortness of breath; (9) Cough; (10) Joint or muscle pain; (11) Depression or anxiety; (12) Fever; and (13) Symptoms that get worse after physical or mental activities.

In light of the above, COVID-19 Sydrome can certainly established extraordinary and compelling reasons justifying Patel's release.

And third, the Court must take into consideration the § 3553(a) factors. See Doc. 196 at pp. 15-16. Hooper does not object to this part of this section.

### IV.     The Court must Dismiss or Deny Defendant's Motion

In this main section of the GO, the government opines the same reasons why this Court "must" dismiss or deny Hooper's motion. Contrary to the government's opinion, this Court has the discretion to grant or dismiss Hooper's motion. The first reason the government spews again is that Hooper has failed to exhaust administrative remedies, defendant's motion "must" be dismissed. Again, the government goes off on another tangent rehashing the same exhaustion arguments previously presented in this 35 page response and replied to by Hooper. Because he has a limited amount of space to reply and in the interest of judicial efficiency, Hooper will not reargue this point because it is sufficiently and adequately briefed above and in his original motion.

Second, the government concedes that defendant's health condition is plausibly qualifying under USSG § 1B1.13, it then claims he provides no evidence that the BOP is unable to manage that condition--particularly given the low number of reported COVID-19 infections in his designated facility. Again, Hooper has sufficiently briefed this point above.

Next, the government claims that Hooper is s a danger to the community under the § 3553(a) factors. In reply, Hooper states that although those factors fully support the substantial sentence originally imposed, in the current context of Hooper's incurable medical condition, and with his efforts of post-conviction rehabilitation, Hooper's family believes compassionate release is appropriate at this time.

Hooper was never convicted of a sex offense, nor did he ever try to escape. It is essential to also note that since Hooper's incarceration began, he has taken numerous steps to attempt to improve himself in "post-conviction rehabilitation." Based on his medical condition and the world's take on the global pandemic right now, and good time credits he has served, Hooper has met all the requirements for compassionate release.

If granted compassionate release, Hooper will reside with his family– where he will be able to isolate himself and take the same precautionary measures that all Americans are taking: frequent hand washing, sanitizing his living space, and seeking medical care if necessary. None of these precautions are available in prison. Further information about these release plans upon request.

### V. Conclusion

The GO concludes by stating that the Court lacks authority to act on defendant's unexhausted motion for compassionate release and it must be dismissed. See Doc. 196 at p. 28.

Hooper objects to the GO's conclusion and states that for the above and foregoing reasons and the reasons previously briefed in his original Motion for Compassionate Release, the Court has authority to act and grant Hooper's Motion for Compassionate Release and reduce his sentence to time served.

Respectfully submitted,

Dated: May 24, 2021

GAVIN WAYNE HOOPER

8

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2021, a true and correct copy of the above and foregoing Defendant's Reply to Government's Opposition to Defendant's Unexhausted Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) was sent via U. S. Mail, postage prepaid, Karen Escalante, Assistant U.S. Attorney at U.S. Attorney's Office, General Crimes Section 312 North Spring Street Suite 1200, Los Angeles, CA 90012.

GAVIN WAYNE HOOPER

PRESS FIRMLY TO SEAL

FSC MIX

PAPER POUCH how2recycle.info

PRIORITY MAIL
FLAT RATE ENVELOPE

UNITED STATES POSTAL SERVICE® | PRIORITY® MAIL

U.S. POSTAGE PAID
PM 2-Day
HOUSTON, TX
77070
MAY 24, 21
AMOUNT
**$7.95**
R2303S101806-03

1006 90012

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com*.

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

Gavin W. Hooper
Reg. No. 73210-112
FCI THREE RIVERS
FEDERAL CORR. INSTITUTION
P.O. BOX
THREE RIVERS, TX 78071

RECEIVED
CLERK, U.S. DISTRICT COURT
MAY 27 2021
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

JAK

TO:

Ms. Ms. Kiry K. Gray
Clerk of Court
U. S. District Court
Central District of California
Western Division (Los Angeles)
255 East Temple Street
Los Angeles, CA 90012-3332

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

TRACKED ■ INSURED

PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

To schedule free Package Pick scan the QR code.

USPS.COM/PICKUP

EXPECTED DELIVERY DAY: 05/27/21
USPS TRACKING® #
9505 5104 4803 1144 3741 56

